**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

---

No. 92-3837

Summary Calendar

---

SECURITIES & EXCHANGE COMMISSION,

Plaintiff-Appellee,

VERSUS

SAM J. RECILE, ET AL.,

Defendants,

SAM J. RECILE,

Defendant-Appellant.

---

Appeals from the United States District Court
for the Eastern District of Louisiana
(CA-91-1422)
(December 3, 1993)

---

Before JOLLY, WIENER, and EMILIO M. GARZA, Circuit Judges

PER CURIAM[*]:

Defendant-Appellant Sam J. Recile appeals from the summary

judgment order (the "Order") entered in favor of Plaintiff-Appellee

---

[*]Local Rule 47.5 provides: "The publication of opinions
that have no precedential value and merely decide particular
cases on the basis of well-settled principles of law imposes
needless expense on the public and burdens on the legal
profession." Pursuant to that Rule, the Court has determined
that this opinion should not be published.

Securities & Exchange Commission ("SEC"). In the Order, the district court concluded that Recile violated the federal securities registration and antifraud provisions along with the broker-dealer registration requirements. The district court consequently granted the SEC's request for equitable and injunctive relief. As we conclude that Recile has completely failed to present any arguments raising genuine issues of material fact with which to challenge the district court's entry of summary judgement, we dismiss this appeal as frivolous and impose sanctions under Federal Rules of Appellate Procedure 38.

I

FACTS AND PROCEEDINGS

Sam Recile's dream of building a huge shopping complex, to be known as Place Vendome, proved to be a nightmare for his investors. Recile sold investment units for the asserted purpose of financing the initial stage of development of Place Vendome. He began selling these units in August 1990 and eventually collected more than $15,000,000 from hundreds of investors nationwide.

Investor's funds were funneled primarily through Hannover, Inc., a corporation controlled by Recile and a female friend, codefendant V. Rae Phillips.[1] Through Hannover, Recile offered and sold securities, called Pre-Acquisition Investment Units ("Investment Units") to the public. Recile solicited purchases of

[1]Phillips was dismissed on December 28, 1992, for her failure to prosecute this appeal under Local Rule 42.3. Phillips subsequently consented to a judgment ordering her to disgorge $675,521.

2

these Investment Units by offering investors "a share of the profit [in Place Vendome] in exchange for preacquisition financing." As Chairman of Hannover, he entered into letter agreements with investors regarding Investment Units wherein he promised investors returns of 100% on their investments within six months--a profit that was to be paid out of long-term financing for Place Vendome once the land was acquired. Moreover, Recile represented that investors' funds would be used to pay "attorneys', architects', engineers', and planners' fees . . . and related preacquisition financing costs" for construction of Place Vendome.

While soliciting these funds from investors, Recile repeatedly represented, in letters signed by him, that: 1) long-term financing had been obtained for Place Vendome, 2) Hannover had acquired signed leases for 700,000 square feet of space in Place Vendome, and 3) the required wetlands permit had already been obtained from the U.S. Army Corps of Engineers. Recile also represented to some investors that he had a personal net worth in the millions, and he touted Hannover as a successful real estate development corporation that owned a large portfolio of real estate.

None of these representations were true. The record reveals that Recile never obtained long-term financing for Place Vendome. The three companies that Recile represented as providing such financing for Place Vendome--DSL Capital Corporation, SAE/Carlson, and Federal Construction Co.--had in fact expressly advised Recile, unequivocally and in writing, that they did not intend to provide

3

such financing.  Neither had Recile or Hannover acquired <u>any</u> signed leases for Place Vendome--the representation of Hannover's having secured leases for 700,000 square feet was patently false.  In addition, Recile did not obtain the necessary wetlands permit from the Army Corps of Engineers until after he had acquired almost $8,000,000 from investors and after the SEC had filed the instant suit.  Finally, Hannover--rather than being a successful real estate development company with large real estate holdings--was in fact a management company that did not own any real estate.

The record further reveals that Recile's representations regarding his own net worth and the use of the investors' funds were likewise false.  For example, Recile was subject to an unsatisfied judgment of $250,000.  And instead of using the investors' funds for preacquisition costs only, significant portions of these funds were diverted for the personal use of Recile and his friend, Ms. Phillips.  For example, approximately $1,200,000 was used to renovate the property on which they lived.  Another $1,300,000 was used to renovate a house owned by Phillips and for other real estate projects not related to Place Vendome.  In December 1990, $59,000 was used to purchase a Mercedes Benz for Phillips' use.  Finally, between August 1990 and February 1992 Recile withdrew at least $790,000 for his own personal expenses.  Recile never disclosed these uses of the funds to his investors.

In April 1991, the SEC filed its complaint, and one month later obtained a preliminary injunction.  This injunction prohibited Recile from selling to anyone other than his wealthy

friends; yet Recile repeatedly violated this prohibition by acquiring funds from non-approved investors after the injunction was implemented. Recile also continually misrepresented to the court and to investors that financing for the project was imminent.[2] In addition, he evaded the reporting and spending limits contained in the preliminary injunction by depositing investors' funds in an account under the name of Place Vendome of America, Inc., a company formed after the complaint was filed.

The SEC filed its Motion for Summary Judgment in June 1992. This motion claimed that Recile: 1) failed to register the Investment Units in violation of §5 (a) & (c) of the Securities Act of 1933,[3] 2) failed to register as a broker-dealer in violation of §15(a) of that same act,[4] and 3) committed securities fraud in violation of §10(b)[5] and Rule 10b-5[6] of the Securities Exchange Act of 1934. The SEC supported its motion by offering extensive documentation of Recile's fraud and registration violations; documentation that included the offering materials, the letter

---

[2]For example, at a status conference in June 1991, Recile told the district court that SAE/Carlson, a large construction firm, "had agreed by the end of the next week" to issue a $200,000,000 letter of credit for construction financing. To corroborate this assertion, Recile brought to the conference George Garfinkle, an employee of SAE/Carlson. This assertion was false: Recile had secretly paid Garfinkle $20,000 to make this claim if asked, and SAE/Carlson fired Garfinkle when it learned of this incident.

[3]15 U.S.C. §77e(a) & (c).

[4]15 U.S.C. §78o(a).

[5]15 U.S.C. §78j(b).

[6]17 C.F.R. 240.10b-5.

5

agreements, and depositions and affidavits obtained from investors and participants in the scheme.

In response to the SEC's motion, Recile requested a continuance of 60 days. The district court granted a one week continuance and rescheduled the summary judgment hearing to allow oral argument. On the day of the hearing, Recile filed an Opposing Statement of Material Facts and presented oral argument.

The district court adopted the SEC's Statement of Material Facts and entered summary judgment for the SEC on all of its claims. The district court's Order granted the SEC broad-ranging relief, which included: 1) permanently enjoining Recile from committing any violation of the federal securities laws, 2) appointing a receiver and granting the receiver complete authority to manage the Place Vendome project, and 3) limiting Recile to spending up to $1,000 a month for personal living expenses. Recile timely appealed from this Order.

## II

## DISCUSSION

We liberally construe briefs in determining issues presented for review; however, issues not raised at all are waived.[7] Moreover, Rule 28 of the Federal Rules of Appellate Procedure mandates that:

> The brief of the appellant shall contain . . . [a]n argument. . . . The argument shall contain the

---

[7]E.g., Atwood v. Union Carbide Corp., 847 F.2d 278, 280 (5th Cir. 1988), reh. on other grounds, 850 F.2d 1093, cert. denied, 489 U.S. 1079 (1989); Kincade v. General Tire & Rubber Co., 635 F.2d 501, 504-06 (5th Cir. 1981).

contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.[8]

Even when we thus construe Recile's brief liberally, we discern but two challenges to the district court's Order. He argues first that a genuine issue of material fact exists concerning the fraud claims, and second, that the district court abused its discretion when it refused to grant him a longer continuance for the summary judgment hearing. Recile presents no argument regarding the securities and broker-dealer registration claims, and he raises only limited argument regarding the fraud claims.[9]

A. Summary Judgment Standard of Review

The grant of a motion for summary judgment is reviewed de novo.[10] Although we review the evidence and any inferences therefrom in the light most favorable to the nonmoving party,[11] a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

---

[8]FED. R. APP. P. 28(a).

[9]Thus, any arguments not made are considered waived. E.g., Atwood, 847 F.2d at 280.

[10]E.g., United States Fidelity & Guaranty Co. v. Wigginton, 964 F.2d 487, 489 (5th Cir. 1992).

[11]Id.

to summary judgment as a matter of law."[12]  And once a properly supported motion for summary judgement has been made, the nonmoving party may not rest upon the mere allegations of denials in its pleadings, but must instead set forth <u>specific facts</u> showing that there is a genuine issue for trial.[13]

B. <u>Raising a Genuine Issue of Material Fact</u>

The SEC amply established its entitlement to summary judgment on the fraud claims.  The summary judgment evidence proffered by the SEC showed, <u>inter alia</u>, that Recile repeatedly misrepresented to investors that he had obtained long-term financing for and had leased 700,000 square feet of Place Vendome, when in fact he had done neither.  He further represented to the investors that their funds would be used to pay preacquisition financing costs, when in fact over $3,000,000 of the funds were diverted to Recile and his friend's personal use.  Moreover, Recile never disclosed this use of the funds to his investors.  Finally, Hannover Corporation-- which Recile had represented to be a successful real estate development company owning substantial real estate--was in fact a management company that did not own any real estate.

In response to the SEC's well documented motion, Recile offered an "Opposing Statement of Material Facts" consisting primarily of conclusionary denials, improbable inferences, and

---

[12]FED. R. CIV. P.56(c).

[13]FED. R. CIV. P.56(e) (emphasis added); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).

legalistic argumentation.[14]   On appeal, Recile--after repeatedly reiterating that a factual dispute exists[15]--identifies only two specific facts as disputed.   First, Recile contends that the Mercedes allegedly purchased for Phillips was in fact purchased for business purposes, and that this purchase was disclosed to all potential investors.   Even if we accept arguendo Recile's version of this assertion, it fails in and of itself to create a genuine issue of <u>material</u> fact.   It does so because it does not refute the other, significantly more important misrepresentations, such as the false statements regarding the financing and leasing status of Place Vendome, that amply satisfy the materiality element of a securities fraud claim.[16]

Recile's second factual claim is premised on an implausible inference.   He argues that the accounting in the special master's report reveals that there was no misuse of the investors' funds. Yet Recile does not dispute the figures contained in those reports-

---

[14]In his opposing statement Recile, perhaps intentionally, did not swear to the truth of his factual statements.  <u>Cf.</u> FED. R. CIV. P. 56(e).

[15]Recile's bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact.  <u>E.g.</u>, <u>Fraire v. Arlington</u>, 957 F.2d 1268, 1273 (5th Cir.), <u>cert. denied</u>, 113 S.Ct. 462 (1992).

[16]A material fact is one "that might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 250. And under the governing law, materiality is defined as what a reasonable investor would consider important in making his investment decision.  <u>E.g.</u>, <u>TSC Industries, Inc. v. Northway, Inc.</u>, 426 U.S. 438, 450 (1976).  Recile's statements regarding the long-term financing and leasing status of Place Vendome clearly qualify as material--the investors were to receive their 100% profit once the property and the long-term financing were acquired.

9

-figures which ultimately reveal that Recile and Phillips diverted over $3,000,000 to personal use. To claim that such diversion does not constitute misuse is simply incredible.[17]

As a final argument, Recile points to no specific facts but instead launches a desperation kamikaze strike at his perceived tormentors: the failure of Place Vendome was due, not to the fraud of Recile, but to the "heavy-handed" conduct of the government coupled with "greedy, self-centered" parties in Baton Rouge. In addition to having no support in the record, this assertion is besides the point. Recile was not charged with "fraudulent failure"--he was charged with making fraudulent statements and omissions in connection with the sale of securities. Whether the project should have succeeded or failed--and to whom credit or fault for the ultimate result belongs--has no bearing on whether Recile's conduct violated the securities laws.[18]

C. Discretion and Continuance for Further Discovery

A district court's denial of a request for continuance pursuant to Rule 56(f) is reviewed only for an abuse of discretion.[19] Moreover, the request need not be granted when the

---

[17]See, e.g., Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (holding that nonmovant cannot manufacture a factual dispute by asking a court to draw inferences contrary to the evidence).

[18]See, International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264 (5th Cir. 1991), cert. denied, 112 S.Ct. 936 (1992) (observing that a court need not consider issues not germane to the claim when deciding a motion for summary judgment).

[19]E.g., United States v. Little Al, 712 F.2d 133, 135 (5th Cir. 1983); Aviation Specialties, Inc. v. United Technologies

party opposing the motion "simply rel[ies] on vague assertions that additional discovery will produce needed, but unspecified facts,"[20] particularly when "ample time and opportunities for discovery have already lapsed."[21]

Recile failed to identify to the district court what specific facts he was going to uncover or develop with additional discovery. Indeed, Recile failed, much like he has done on appeal, even to identify the specific issues that the additional discovery would have addressed. Furthermore, Recile had been involved in discovery for fifteen months before the hearing on the summary judgment motion--discovery that focused on facts regarding his mental state that were within his easy grasp.[22] We conclude that under these circumstances that the district court did not abuse its discretion in granting Recile's motion for a continuance for a shorter period than he requested.

## III

## CONCLUSION

Recile's attempt to overturn the district court's summary judgement Order fails for want of facts. He failed to proffer any specific facts to rebut the SEC's summary judgment evidence.

---

Corp., 568 F.2d 1186, 1189 (5th Cir. 1978).

[20]SEC v. Spence & Green Chemical Co., 612 F.2d 896, 900 (5th Cir. 1980), cert. denied, 449 U.S. 1082 (1981).

[21]Id.

[22]Recile knew the identity of the investors and contractors who gave declarations to the SEC. In addition, the majority of documents in this case were created by or sent to Recile.

11

Recile likewise failed to explain how granting his request for a continuance for a shorter period than he requested denied him the opportunity to uncover or develop such facts.  We thus perceive this appeal to be nothing more than a frivolous play for time, delaying the inevitable by wasting the resources of this court and the SEC alike.  Consequently, Recile's counsel is cautioned henceforth to observe more closely the line between zealous advocacy and abusive prosecution of meritless appeals; and Recile's appeal of the Order of the district court is DISMISSED as frivolous, with imposition of sanctions under Federal Rules of Appellate Procedure 38, assessing double costs to Recile.