IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-10212
Summary Calendar
_____

COLONIAL PENN INSURANCE,

Plaintiff-Appellee,

versus

MARKET PLANNERS INSURANCE AGENCY INC.; JIMMY WHITED,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Texas, Dallas Division

_____

October 28, 1998

Before EMILIO M. GARZA, DeMOSS and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Defendants Market Planners Insurance Agency Inc. ("Market Planners") and Jimmy Whited appeal from a judgment against them for approximately $150,000 in unremitted insurance premiums plus interest. We affirm.

I

This Circuit has seen this case before, and our prior opinion sets forth the relevant facts. *See Colonial Penn Ins. Co. v. Market Planners Inc.*, 1 F.3d 374 (5th Cir. 1993). In September 1992, following a two-day bench trial, the Northern District of Texas, the Honorable Joe Fish presiding, entered judgment for the

plaintiff, Colonial Penn Insurance Co. ("Colonial Penn"), on its claim that Market Planners and Jimmy Whited, Market Planners' president, failed to remit premiums collected on the sale of Colonial Penn insurance policies. The district court held that the statute of limitations did not bar Colonial Penn's suit because Market Planners fraudulently concealed facts material to the cause of action. Defendants appealed to this Court, arguing *inter alia* that Colonial Penn pleaded neither the "discovery rule" nor fraudulent concealment, giving the district court no basis for its ruling on the statute of limitations, and that the district court ignored evidence that Colonial Penn knew or should have known of its cause of action in 1986. This Court found that Colonial Penn met its pleading burden in countering the defendants' affirmative statute of limitations defense, *see id.* at 376, but that the district court made inconsistent statements concerning, and possibly misinterpreted, Texas law. We therefore remanded to the district court for a determination "whether and when Colonial Penn learned 'of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action.'" *Id*. at 378 (citation omitted).

On remand, the district court stated that "the question presented . . . is whether Colonial first knew, or in the exercise of reasonable diligence should have known, of facts

2

giving rise to a cause of action against Market Planners outside of the prescriptive period. The court finds that Colonial did not." *Colonial Penn Ins. Co. v. Market Planners Ins. Agency Inc.*, 1998 WL 51359, *1 (N.D. Tex. Jan. 23, 1998). Accordingly, the district court entered judgment for Colonial Penn. Defendants now appeal that judgment, contending (1) that the district court again has misinterpreted the statute of limitations and (2) that the district court's findings of fact and conclusions of law do not support a judgment against defendant Jimmy Whited individually.

II

Defendants argue that the district court on remand again has made erroneous factual findings and misinterpreted Texas law as to when the statute of limitations began to run. This issue requires us to examine two statute of limitations doctrines under Texas law: the discovery rule and fraudulent concealment.

The discovery rule provides a "very limited exception" to statutes of limitations. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1994). The rule postpones the running of the statutory limitation period until such time as the claimant discovers, or in exercising reasonable diligence should have discovered, facts that indicate he has been injured. *See, e.g.*, *Willis v. Maverick*, 760 S.W.2d 642, 643, 644 (Tex. 1988); *Seibert v. General Motors Corp.*, 853 S.W.2d 773, 776 (Tex.

3

App.—Houston [14th Dist.] 1993, no writ). The discovery rule applies only in cases where the claimant's injury was "inherently undiscoverable," i.e., where the plaintiff did not and could not know of the injury. *Seibert*, 853 S.W.2d at 776; *see also Velsicol Chemical Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex. 1997). The rule delays the statute of limitations only until the claimant knows or should know the facts that could support a cause of action, not until she realizes that the facts do support a cause of action: "It does not operate to toll the running of the limitation period until such time as plaintiff discovers all of the elements of a cause of action. Once [a claimant learns] that she [has] been injured, the burden [is] on her to determine whether she should file suit." *Coody v. A.H. Robins Co.*, 696 S.W.2d 154, 156 (Tex. App.—San Antonio 1985, writ dism'd by agr.); *see also Tennimon v. Bell Helicopter Textron, Inc.*, 823 F.2d 68, 72 (5th Cir. 1987) (per curiam) (citing *Coody*); *Seibert*, 853 S.W.2d at 777 ("Texas law makes it clear that it is the discovery of the injury, and not the discovery of the cause of action, which starts the running of the clock . . . .").

A fiduciary relationship between parties sometimes makes the discovery rule applicable where it otherwise would not be. "[I]n the fiduciary context, it may be said that the nature of the injury is presumed to be inherently undiscoverable, although a person owed a fiduciary duty has some responsibility to ascertain

when an injury occurs." *Computer Assocs.*, 918 S.W.2d at 456

(citing *Courseview, Inc. v. Phillips Petroleum Co.*, 312 S.W.2d

197, 205 (Tex. 1957)). Therefore, even if Colonial Penn in a

nonfiduciary, common business context perhaps should have known

at an earlier date that it was injured, the fiduciary duty owed

it by Market Planners might nonetheless make the discovery rule

applicable.

In tandem with the discovery rule under Texas law is the

doctrine of fraudulent concealment.[1] Fraudulent concealment tolls

the statute of limitations until the claimant discovers or with

reasonable diligence should have discovered the fraud. *See, e.g.*,

*L.C.L. Theatres, Inc. v. Columbia Pictures Indus., Inc.*, 566 F.2d

494, 496 (5th Cir. 1978); *Computer Assocs.*, 918 S.W.2d at 455;

*Ruebeck v. Hunt*, 176 S.W.2d 738, 739 (Tex. 1943). Texas law

engenders some confusion as to exactly what discovery starts the

statute running in fraudulent concealment cases. The leading

case, *Borderlon v. Peck*, 661 S.W.2d 907 (Tex. 1983), offers two

possibilities. First, the statute may begin to run when the

claimant actually deduces that he has a cause of action: "Where a

defendant is under a duty to make disclosure but fraudulently

conceals the existence of a cause of action from the party to

---

1.    The Texas Supreme Court has said that the discovery rule also applies in cases of fraudulent concealment. *See Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997). It makes no matter that we handle the two rules separately for clarity's sake; the result in this case is the same.

whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence." *Id*. at 908; *see also, e.g.*, *Nichols v. Smith*, 507 S.W.2d 518, 519 (Tex. 1974); *Seibert*, 853 S.W.2d at 776. Second, the statute may begin to run as soon as the claimant knows the facts that, upon further examination, would prove to underlie a cause of action: "The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. Knowledge of such facts is in law equivalent to knowledge of the cause of action." *Borderlon*, 661 S.W.2d at 909. This latter position finds support in older Texas Supreme Court cases, which emphasize a claimant's duty to exercise reasonable diligence to discover a cause of action, *see Ruebeck*, 176 S.W.2d at 740; *Glenn v. Steele*, 61 S.W.2d 810, 810 (Tex. 1933) (per curiam), and it mirrors the rule applicable in discovery cases. As such, and given *Borderlon*'s clear statement that knowing facts equals knowing a cause of action, it appears that, in fraudulent concealment cases, Texas law starts the statute of limitations running as soon as the claimant knows the facts that could support a cause of action.

The district court in its ruling on remand harmonized the

6

discovery rule, including its fiduciary relationship component, and the doctrine of fraudulent concealment. The court wrote:

> [T]he court rejects Market Planners' argument that Colonial, through the exercise of reasonable diligence, should have known of the facts giving rise to its cause of action prior to their actual discovery. As stated in the initial findings, the court grounds this ruling in the special agency relationship which existed between Colonial and Market Planners. This relationship of trust made it objectively reasonable for Colonial to rely on Market Planners' representations until Colonial discovered evidence contrary to those representations. Colonial, by conducting the [internal] audit, exercised due diligence in discovering evidence of Market Planners' wrongdoing.

*Colonial Penn Ins. Co. v. Market Planners Ins. Agency, Inc.*, 1998 WL 51359, *2 (N.D. Tex. Jan. 23, 1998). The district court thus found that Market Planners' fiduciary relationship with Colonial Penn made the unremitted premiums inherently undiscoverable. Only when Colonial Penn's problems with American Owners and Operators ("AOO"), its middleman, led it in due diligence to conduct an internal audit did it discover that Market Planners owed almost $150,000 in previously concealed premiums. Even under a strict reading of Texas law--one that starts the statute of limitations

7

tolling as soon as the claimant discovers facts that could lead to a cause of action--the district court correctly applied the law to its findings.

Though we have found that the district court properly applied the law to its findings, one question remains as to this point of error: whether the evidence could support the district court's factual finding that Colonial Penn had no reason to know before November 1989 of the unremitted premiums. The evidence showed that Colonial Penn retrieved most policy files from AOO in 1986. Colonial Penn's general counsel, Christine Bancherie, testified that only during the discovery process in Colonial Penn's suit against AOO, filed in March 1987, did Colonial Penn receive the last information it needed in order to reconstruct premiums. Colonial Penn hired an independent agency, Control Risk Services, to work on the files; owing to the files' disheveled state, Bancherie testified, CRS continued adjusting figures until May or June 1989. Colonial Penn further alleged that Market Planners refused to account for premiums it had collected. Finally, Colonial Penn's agency financial audit manager testified that Colonial Penn had "the complete facts, the reconstructed policy premium from CRS and the receipt document" only just before it sent the November 1989 demand letter. From this evidence, it was not clear error for the district court to conclude that Colonial Penn neither knew nor should have known of the unremitted premiums before its November 1989 letter to Market

8

Planners.

Accordingly, we affirm the district court's ruling that the statute of limitations did not bar Colonial Penn's action.

III

As a second point of error, defendant Jimmy Whited contends that no evidence presented at trial could support a judgment against him individually. Whited apparently raises two separate contentions. First, he argues that none of the district court's findings of fact could support a judgment against him individually. Second, he argues that to the extent any finding could support a judgment, that finding is clearly erroneous.[2]

Appellee Colonial Penn argues that, because Whited raises the issue for the first time on appeal, this Court may review only for "plain error," if at all, whether the evidence sufficed to support a judgment against Whited. We see no reason why Whited, following a bench trial,[3] cannot argue now for the first

_____

2. Federal Rule of Civil Procedure 52(b) allows an appeal of the district court's factual findings:
> When findings of fact are made in actions tried without a jury, the sufficiency of the evidence supporting the findings may later be questioned whether or not in the district court the party raising the question objected to the findings, moved to amend them, or moved for partial findings.

3. In a jury trial, of course, a party must make (and renew at the trial's conclusion) a Rule 50(a) motion for judgment as a matter of law in order to preserve sufficiency of the evidence for appellate review. *See, e.g.*, *Polanco v. City of Austin*, 78 F.3d 968, 974 (5th Cir. 1996); *MacArthur v. University of Texas Health Ctr.*, 45 F.3d 890, 896 (5th Cir. 1995). But nothing indicates that a similar rule applies to an appeal of the

time that the court's findings were clearly erroneous or that they cannot support the judgment. In *Gilbert v. Sterrett*, 509 F.2d 1389 (5th Cir. 1975), this Court considered an appeal contending that a district court, in a bench trial, either applied the wrong legal standard or made clearly erroneous factual findings. There we "attach[ed] no significance" to the appellants' "failure . . . to file a motion in the district court for additional findings" that might better support the judgment. *Id.* at 1393. The Eleventh Circuit, soon after its split from the Fifth, considered a case raising for the first time on appeal whether the facts the district court found amounted as a matter of law to a protected property interest. *See Ogletree v. Chester*, 682 F.2d 1366 (11th Cir. 1982). That court wrote, "Throughout his brief, the appellee has contended that the appellants' failure to comply with Fed. R. Civ. Pro. 50 forecloses review of the 'sufficiency of the evidence' on the issue presented in this non-jury case. To the contrary, that rule poses no bar to our consideration of the issues in this appeal." *Id.* at 1368 n.1. We review for clear error whether the evidence supports the district court's factual findings. We review *de novo* whether those findings support a judgment against Whited individually, as that is a legal conclusion.

---

sufficiency of evidence to support findings or sufficiency of findings to support a judgment following a bench trial.

In actions tried upon the facts to a court, the court must state separately its factual findings and its legal conclusions. Fed. R. Civ. P. 52(a). The findings and conclusions "must be sufficient in detail and exactness to indicate the factual basis for the ultimate conclusion reached by the court." *Acme Boat Rentals, Inc. v. J. Ray McDermott & Co.*, 407 F.2d 1324, 1325 (5th Cir. 1969). If the district court's factual findings are insufficient to allow this Court to review the judgment below, then we must vacate the judgment and remand for more detailed findings. *See, e.g.*, *In re Incident Aboard the D/B Ocean King*, 758 F.2d 1063, 1072 (5th Cir. 1985). On the other hand, when considering whether facts support the district court's judgment, we construe the court's findings liberally and find them "to be in consonance with the judgment, so long as that judgment is supported by evidence in the record." *Kelleher v. Flawn*, 761 F.2d 1079, 1083 n.1 (5th Cir. 1985) (quoting *Gilbert*, 509 F.2d at 1393 (internal quotes and citations omitted)). Thus, so long as we can understand the issues completely and the record gives sufficient basis for this Court to consider the merits of the case, we need not remand. *See, e.g.*, *Gulf Towing Co. v. Steam Tanker, Amoco*, 648 F.2d 242, 245 (5th Cir. Unit B 1981).

The parties to this action stipulated that Whited served as president of Market Planners and that he participated in running the business, including selling Colonial Penn policies and

collecting premiums. The district court could have imposed legal liability upon Whited under two theories: (1) that Market Planners constituted Whited's alter ego, so that fairness required piercing the corporate veil and holding Whited liable for Market Planners' wrongdoing, *see, e.g.*, *Matthews Constr. Co. v. Houston Pipe & Supply Co.*, 796 S.W.2d 692, 693 (Tex. 1990); *Loomis Land & Cattle Co. v. Wood*, 699 S.W.2d 594, 597 (Tex. App.—Texarkana 1985, writ ref'd n.r.e.); or, as Colonial Penn contends, (2) that Whited himself served along with Market Planners as a local recording agent for Colonial Penn and as such personally owed premiums to Colonial Penn, *see, e.g.*, *Oakes v. Guarantee Ins. Co.*, 573 S.W.2d 899 (Tex. Civ. App.—Eastland 1978, writ ref'd n.r.e.) (holding local recording agent liable for unpaid premiums although agent lacked required certificate of authority from state). Colonial Penn did not argue in pleadings or at trial for piercing the corporate veil, and the record lacks any evidence of an alter ego that would have allowed the district court to pierce the veil. *See Elliott v. Tilton*, 89 F.3d 260, 264 (5th Cir. 1996) (reversing judgment against individual defendants where plaintiffs tried to make "piercing the corporate veil" argument for the first time on appeal and no evidence in the record supported piercing the veil). Accordingly, the basis for liability against Whited individually must be that Whited himself was a local recording agent for Colonial Penn. Because the

12

district court recognized the agency question as "paramount in deciding the outcome of this case" and concluded that it would impose joint and several liability based on "breach of agency duty," we may presume that the court found that Whited was an agent of Colonial Penn.[4] We examine the record in this appeal for any evidence that lends support to that finding.

On direct examination at trial, Colonial Penn's general counsel testified that based on exhibits in evidence, including local recording agent licenses and agent appointment applications, she believed Whited was a local recording agent of Colonial Penn. On cross examination, however, she testified that Colonial Penn did not receive an appointment form naming Whited individually as an agent of Colonial Penn. Whited himself, on cross-examination, stated variously that he either was not Colonial Penn's agent or was "probably their agent but not through a contractual agreement." Although scarce, this evidence provides enough that we cannot say the district court was clearly erroneous to find that Jimmy Whited was an agent of Colonial Penn.[5]

---

4.  The district court could hardly have escaped the issue, given that, in the Consolidated Pretrial Order, the defendants specifically listed as a contested fact whether Whited was an agent of Colonial Penn.

5.  The court may also have been swayed by closing arguments, in which Colonial Penn referred to Texas Insurance Code Article 21.02--which defines who are agents for purposes of the liabilities, duties, requirements, and penalties that Texas Insurance Code Chapter 21 imposes on agents--and argued that

13

IV

Accordingly, the judgment of the district court against Market Planners Insurance Agency Inc. and against Jimmy Whited individually is AFFIRMED.

---

Whited offered no evidence to rebut his agency status.