# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20506

United States Court of Appeals
Fifth Circuit

**FILED**

August 8, 2017

Lyle W. Cayce
Clerk

LEGACYRG, INCORPORATED,

Plaintiff - Appellee

v.

CHRIS HARTER,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-1574

Before STEWART, Chief Judge, and HIGGINBOTHAM and COSTA, Circuit Judges.

PER CURIAM:*

Plaintiff LegacyRG ("Legacy") is a restaurant company that employed Defendant Chris Harter for approximately five years. After Harter left the company, Legacy alleged it discovered Harter had been stealing money from it by manipulating the payroll. Legacy sued Harter for breach of fiduciary duty, fraud, and breach of contract. The district court granted Legacy's motion for

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20506

summary judgment and denied Harter's. Concluding there are genuine issues of material fact inappropriate for resolution at summary judgment, we AFFIRM in part and REVERSE in part.

## I.

Harter worked as president and CEO of Legacy between November of 2006 and May or June of 2011.[1] In 2006, the parties signed an employment agreement that stated Harter's initial salary would be $275,000.[2] This case concerns Harter's salary in the years 2009 and 2010.

It is undisputed that Harter was paid $308,173.02 in 2009 and $365,384.56 in 2010. The payroll records indicate Harter received regular biweekly payments, plus several additional payments that did not fall on the biweekly schedule. The payroll records further indicate that Harter was paid various amounts—typically $10,576.92. Harter agrees he received these irregular payments. The parties dispute, however, whether the payments over and above $275,000 in 2009 and 2010 were authorized. Legacy claims Harter surreptitiously stole the money in random amounts over the two-year period. Harter counters that Niel Morgan, the founder, director, and sole shareholder of Legacy, authorized every payment.

Legacy sued Harter, alleging (1) breach of fiduciary duty, (2) fraud, (3) fraud by nondisclosure, (4) breach of contract for the employment agreement,

---

[1] Harter disputes that he was president and CEO, but he held himself out as Legacy's President and CEO as indicated by his business card, correspondence, and LinkedIn page. Further, Harter admitted in his answer to Legacy's first amended complaint that he "held the title of President and CEO."

[2] The provision stated: "Your initial salary will be $275,000 per annum, payable semi-monthly . . . The initial term of your employment will be the one (1) year period ending November 1, 2007[.]"

2

No. 16-20506

and (5) breach of contract for the separation agreement.[3] After some discovery, the parties filed cross motions for summary judgment. The district court granted Legacy's motion for summary judgment and denied Harter's. In doing so, it rejected Harter's argument that Legacy's claims were barred by the statute of limitations. It also granted Legacy's request for attorney fees.

Harter now appeals, and also requests that this Court give the district court special discovery instructions in the event of a remand.[4]

## II.

The district court had jurisdiction under 28 U.S.C. § 1332. This Court has jurisdiction under 28 U.S.C. § 1291. "We review a district court's grant of summary judgment *de novo*, viewing all facts and drawing all inferences in a light most favorable to the non-moving party."[5] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6]

---

[3] Harter voluntarily left Legacy in May or June of 2011, around which time the parties entered into a separation agreement, which stated in part:

> Employee agrees that Employee will immediately return to Company all Company property in Employee's possession and control, including any and all documents, records, plans . . . and any other property relating to the business of the Company or its affiliates or containing any Confidential Information.

Legacy alleged Harter breached the agreement by failing to return the stolen money.

[4] Harter moved for a new trial under Federal Rule of Civil Procedure 59(a) on the basis of newly discovered testimony. The district court rejected Harter's motion to vacate the judgment. On appeal, Harter abandons arguments related to his Rule 59 motion.

[5] *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 425–26 (5th Cir. 2017) (citing *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016)); *accord Ocwen Loan Servicing, L.L.C. v. Berry*, 852 F.3d 469, 471–72 (5th Cir. 2017).

[6] FED. R. CIV. P. 56(a).

No. 16-20506

## III.

Because there are material fact issues, we affirm the district court's denial of Harter's summary judgment motion, but reverse its grant of Legacy's summary judgment motion. Fact issues are present with regard to the preliminary question of when the statute of limitations began to run, as well as on the merits of Legacy's claims. Moreover, because summary judgment was improper on Legacy's breach of contract claims, so was the award of attorney fees on such claims. Finally, we reject Harter's requests to issue discovery instructions to the district court.

### A.

We begin with the statute of limitations. Legacy sued Harter on June 6, 2014. The statute of limitations for each of Legacy's claims is four years.[7] "Normally a cause of action accrues when a wrongful act causes some legal injury."[8] Because Legacy alleges that Harter stole from it in 2009 and 2010, most of Legacy's claims are barred by the statute of limitations unless an exception applies. "[T]wo exceptions may defer accrual of a claim: the discovery rule and the doctrine of fraudulent concealment."[9] Legacy asserts the discovery rule applies, specifically disavowing reliance on fraudulent concealment.

---

[7] TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a) (West) (four year statute of limitations for fraud and breach of fiduciary duty); *Id.* at § 16.051 (West) (four year statute of limitations for claims without express provisions); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (per curiam) (four year statute of limitations for breach of contract).

[8] *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam) (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).

[9] *Moczygemba v. Moczygemba*, 466 S.W.3d 212, 216 (Tex. App. 2015), *review denied* (Sept. 2, 2016); *accord S.V.*, 933 S.W.2d at 6; *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997).

No. 16-20506

"The discovery rule provides a 'very limited exception to statutes of limitations.'"[10] "It applies to instances in which the nature of the plaintiff's injury is 'inherently undiscoverable and the evidence of injury is objectively verifiable.'"[11] "'An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence.' This legal question is decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable."[12]

"[I]n the fiduciary context, it may be said that the nature of the injury is presumed to be inherently undiscoverable, although a person owed a fiduciary duty has some responsibility to ascertain when an injury occurs."[13] In other words, "a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so. While a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct, so long as that relationship exists, when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship."[14] "[W]hen there has been a breach of fiduciary duty, the statute of limitations does not begin to run until the

---

[10] *Tho Q. Pham v. Jason Bryan Carrier, et al.*, No. 07-15-00031-CV, 2017 WL 1291660, at *5 (Tex. App. Apr. 3, 2017) (quoting *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929 (Tex. 2011)).

[11] *Moczygemba*, 466 S.W.3d at 216 (quoting *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65–66 (Tex. 2011)); *accord Via Net*, 211 S.W.3d at 313; *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998).

[12] *Via Net*, 211 S.W.3d at 313–14 (quoting *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001), and citing *Wagner & Brown*, 58 S.W.3d at 736; *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001)).

[13] *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996) (citing *Courseview, Inc. v. Phillips Petroleum Co.*, 312 S.W.2d 197, 205 (Tex. 1957)).

[14] *S.V.*, 933 S.W.2d at 8 (citing *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988); *Slay v. Burnett Trust*, 187 S.W.2d 377, 394 (Tex. 1945)).

claimant knew or should have known of facts that in the exercise of reasonable diligence would have led to the discovery of the wrongful act."[15]

Concluding that the discovery rule applied, the district court found that

[a]lthough Legacy had access to the records of Harter's embezzlement, no indication of misconduct prompted Legacy to investigate. During the time that Harter was altering the payroll, he was in charge of all records which would have revealed his theft. Since all payroll documents were his responsibility, and Legacy had no reason to suspect he was stealing, [its] injury was not discoverable like Harter says it was.

Alternatively, the district court found that because Harter was a fiduciary, Legacy could recover all improper payments. We address each theory in turn.

1.

Contrary to Harter's arguments, the discovery rule generally applies because Harter was Legacy's fiduciary.[16] Nevertheless, we cannot say as a matter of law that the discovery rule saves Legacy's claims from the statute of limitations.

"Generally speaking, [the term fiduciary] applies to any person who occupies a position of peculiar confidence towards another . . . The term

---

[15] *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997) (citing *Slay*, 187 S.W.2d at 394). We note up front that there is some tension in the doctrine with respect to how to apply the discovery rule. On one hand, as the Texas Supreme Court stated in *Little*, it begins to run when the "claimant knew or should have known of facts that in the exercise of reasonable diligence would have led to the discovery of the wrongful act." *Id.* On the other hand, in *S.V. v. R.V.*, the Texas Supreme Court suggested the standard is when the misconduct becomes "apparent," *i.e.*, "when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship." 933 S.W.2d at 8. Though the language produces some tension, we do not view it as irreconcilable. We thus leave it in the hands of the able district court to correctly apply Texas's discovery rule standard on remand.

[16] We need not address Harter's claim that Legacy waived argument on the discovery rule, because even assuming *arguendo* it was preserved, Legacy's argument fails.

includes those informal relations which exist whenever one party trusts and relies upon another, as well as technical fiduciary relations."[17] In Texas, "agency is . . . a special relationship that gives rise to a fiduciary duty."[18] The employer-employee relationship is typically an agency relationship.[19] The evidence shows that Harter was Legacy's President and CEO, but even if he was not, there is no dispute that Harter was Legacy's employee. Accordingly, he had a fiduciary duty to Legacy, and the discovery rule generally applies.[20]

Although the discovery rule applies generally, we must determine whether its application here protects Legacy's claims from the statute of limitations. "[T]he commencement of the limitations period may be determined as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts in the record."[21] "The party seeking to benefit from the discovery rule must also bear the burden of proving and securing favorable findings thereon."[22]

---

[17] *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 512–13 (Tex. 1942) (citations omitted).

[18] *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002) (citing *Kinzbach Tool Co.*, 160 S.W.2d at 513).

[19] *See id.* at 201. The Texas Supreme Court has "approved the Restatement (Second) of Agency in regard to the general duty of an agent: '[u]nless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency.'" *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 700 (Tex. 2007) (quoting *Johnson*, 73 S.W.3d at 200)).

[20] *See S.V.*, 933 S.W.2d at 8. Contrary to Harter's suggestions, *HECI Exploration* supports this conclusion. There, the Texas Supreme Court held that the discovery rule did not apply to prevent the statute of limitations from running on royalty owners' (the Neels) claims against their oil and gas lessee (HECI). 982 S.W.2d at 885–86. While "Texas law ha[d] never recognized a fiduciary relationship between a lessee and royalty owners[,]" *id.* at 888 (citing *Harrison v. Bass Enterprises Prod. Co.*, 888 S.W.2d 532, 537 (Tex. App. 1994)), Texas law has recognized a fiduciary relationship between employee and employer, *see Nat'l Plan Adm'rs*, 235 S.W.3d at 700.

[21] *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998).

[22] *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988) (citations omitted); *see also KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746,

No. 16-20506

"When applicable, the discovery rule 'defers the accrual of the cause of action until the injury was or could have been reasonably discovered.'"[23] Legacy sued Harter on June 6, 2014. Thus, if the additional payments "[were] or could have been reasonably discovered" before June 6, 2010, the statute of limitations bars Legacy's claims.[24]

Harter contends that Legacy knew or should have known of the alleged misconduct beginning in 2009 based on the company's tax returns. Harter further argues that Legacy had access to pertinent payment records. Legacy counters that it "was not obligated to investigate whether Harter was stealing money, because companies are entitled to trust their fiduciaries." Legacy suggests that it did not have actual knowledge of the payments.

The parties' affidavits paint different pictures of who had access to and control over payments. Morgan states that Harter controlled the payroll in 2009 and 2010, had bank statements sent only to him, and that Legacy's access to those accounts would not reveal Harter's scheme. Harter responds that QuickBooks, payroll, and bank statements were open for review by Morgan, Legacy bookkeepers, and CFOs, that Morgan regularly reviewed financial activities, and that other staff was responsible for reconciling bank statements. The parties thus dispute whether the alleged misconduct was apparent prior to June 6, 2010.[25]

---

748 (Tex. 1999) (explaining defendant's burden if moving for summary judgment on limitations defense); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

[23] *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015) (quoting *Shell Oil Co.*, 356 S.W.3d at 929–30).

[24] With the exception of injuries that occurred after this date.

[25] *S.V.*, 933 S.W.2d at 8 ("While a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct, so long as that relationship exists, when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship.").

No. 16-20506

The state government documents and tax filings do not elucidate the issue. Texas Workforce Commission ("TWC") quarterly reports state the amount Harter was paid. The TWC report for the first quarter of 2009 was filed in April of 2009. Even if Legacy did not actually know of these facts, the question is whether "the injury was or *could have been* reasonably discovered."[26] This is a disputed fact question. We reach the same conclusion based on the tax returns.

Legacy directs the Court to *Colonial Penn Insurance v. Market Planners Insurance*,[27] but the case is inapposite. In *Colonial Penn,* Colonial Penn Insurance brought suit against Market Planners for failing to remit premiums.[28] The question was whether the district court correctly found that the discovery rule tolled the statute of limitations that otherwise would have barred Colonial's suit. This Court affirmed the district court's finding that Colonial "neither knew nor should have known of the unremitted premiums before [] November 1989[.]"[29] Importantly, this conclusion followed a bench trial, and then a remand to the district court for a specific determination of when Colonial Penn learned of the relevant underlying facts.[30] At this summary judgment stage, by contrast, the evidence is not as conclusive.[31]

---

[26] *Valdez*, 465 S.W.3d at 229 (emphasis added) (quoting *Shell Oil Co.*, 356 S.W.3d at 929–30); *see also Little*, 943 S.W.2d at 420 ("[W]hen there has been a breach of fiduciary duty, the statute of limitations does not begin to run until the claimant knew or should have known of facts that in the exercise of reasonable diligence would have led to the discovery of the wrongful act." (citing *Slay*, 187 S.W.2d at 394)). Legacy argues that even if Legacy employees had reviewed the payroll, they would not have known about the misconduct since no one besides Harter and Morgan knew Harter's salary. But there is a fact issue whether the payments were apparent to Morgan.

[27] 157 F.3d 1032 (5th Cir. 1998).

[28] *Id.* at 1034.

[29] *Id.* at 1036.

[30] *See id.* at 1034.

[31] *See Barker v. Eckman*, 213 S.W.3d 306, 312 (Tex. 2006) ("[E]xactly when [the plaintiff] should have known of the facts giving rise to the individual breaches by the

No. 16-20506

2.

The district court alternatively found that "[e]ven if the claim accrued when Harter stole the money, Harter's role as fiduciary allows Legacy to recover all improper payments. It does not matter that seventeen payments occurred over four years before the claim." Legacy argues that this holding separately bars the running of the statute of limitations. We disagree.

Legacy cites *Advanced Nano Coatings, Inc. v. Hanafin*.[32] However, in that case, the only issue on appeal was the amount of damages and fees an employee defendant owed his employer plaintiff after a bench trial.[33] This case is instructive on damages, not the threshold issue of statute of limitations. Similarly, *ERI Consulting Engineers, Inc. v. Swinnea*,[34] another case Legacy cites, concerned whether equitable forfeiture was a possible remedy in a breach of fiduciary duty case.[35] While it may be,[36] this case likewise did not address the statute of limitations. Discussion about the availability of a disgorgement remedy at this stage is premature.

We conclude that there is a genuine issue of material fact about when Legacy discovered or should have discovered the nature of its injury. We therefore reverse the district court's finding that the discovery rule applies as a matter of law.

---

[defendants] was disputed. The trial court was precluded from applying the discovery rule to delay accrual of [the plaintiff's] causes of action absent jury findings because the evidence was not conclusive as to those matters." (citing *Childs*, 974 S.W.2d at 44)).

[32] 556 F. App'x 316 (5th Cir. 2014).

[33] *Id.* at 317–18.

[34] 318 S.W.3d 867 (Tex. 2010).

[35] *See id.* at 870, 872.

[36] *Id.* at 873 ("[C]ourts may fashion equitable remedies such as profit disgorgement and fee forfeiture to remedy a breach of fiduciary duty.").

No. 16-20506

## B.

We turn now to the merits of Legacy's claims. Harter is correct that the "critical dispute" is whether Legacy authorized the money paid to Harter in 2009 and 2010. Because this Court cannot conclude as a matter of law that the disputed payments were unauthorized, resolution of Legacy's claims was inappropriate at summary judgment.

Harter argues that "he and Morgan discussed his need for additional compensation and that Legacy and Morgan agreed to all amounts that he was paid as salary." He views this as "a classic swearing match," and that the district court improperly chose a side to believe. Legacy responds that to think the payments were authorized would be "[s]imply incredible" in light of the timing and sums of the payments. Legacy attacks Harter's declaration as conclusory and further asserts that the payments "make absolutely no 'economic sense' as anything other than theft by a trusted manager who had sole control of the payroll software."

Harter's declaration states that the payments were authorized and explains why; Morgan's does the opposite. Neither contains the kind of "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence"[37] that would allow the Court to reject them.[38] Legacy's attempts to show otherwise

---

[37] *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 407 (5th Cir. 2011) (per curiam) (citing *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010)); *accord Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) ("All 'facts and inferences [must be drawn] in the light most favorable to the party opposing the motion.' But '[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.'" (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001), and *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003)).

[38] For similar reasons, Legacy's citations to *Wallace v. Texas Tech Univ.* are not on point. Unlike here, the plaintiffs in that case made a "vague and conclusory statement" that "fail[ed] to 'designate specific facts'—such as what was said, to whom it was said, or even who

are unpersuasive. For instance, Legacy points to *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, but that case concerned summary judgment in the distinct context of antitrust conspiracy.[39] Legacy also analogizes to *S.E.C. v. Recile*, in which this Court affirmed a grant of summary judgment to the SEC on fraud claims against the defendant, finding those claims "amply established."[40] Indeed, in *Recile*, the SEC presented "extensive documentation of [the defendant's] fraud and registration violations; documentation that included the offering materials, the letter agreements, and depositions and affidavits obtained from investors and participants in the scheme."[41] On the other side of the balance, the defendant offered a conclusory statement.[42] Here, although there is documentation that shows Harter's payments exceeded $275,000 per year, there is not documentation that shows such payments were unauthorized. Unlike in *Recile*, where $3,000,000 in diverted funds substantiated claims of misuse,[43] $123,557.58 does not, on its own, substantiate claims of theft unless one also accepts that Harter's salary never rose from $275,000—a disputed fact.

Legacy argues that it is difficult to imagine that Morgan would approve Harter's additional payments irregularly and with inconsistent amounts. But Harter offers an explanation of increased workload and family financial obligations. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to

---

made the comments[.]" 80 F.3d 1042, 1048 n.6 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam)).

[39] 475 U.S. 574, 576 (1986).

[40] 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam).

[41] *Id.* at 1096.

[42] *See id.* at 1097.

[43] *See id.* at 1097–98.

determine whether there is a genuine issue for trial."[44] Similarly, Legacy

recites the rule that "[a] party's self-serving and unsupported statement in an

affidavit will not defeat summary judgment where the evidence in the record

is to the contrary."[45] Here, however, the evidence to the contrary is Morgan's

declaration. While the payroll records may give rise to an inference that the

payments were unauthorized, at summary judgment inferences must be drawn

"in a light most favorable to the non-moving party."[46]

This Court in *Heinsohn v. Carabin & Shaw, P.C.* addressed the issue of

evaluating affidavits at summary judgment and found:

> [a]t bottom, the magistrate judge and district court erred in
> rejecting [the fired employee's] statements as self-serving and
> accepting [the employers']. Such an "approach is inconsistent with
> fundamental rules governing summary judgment." "By choosing
> which testimony to credit and which to discard, '[a] court
> improperly 'weigh[s] the evidence' and resolve[s] disputed issues
> in favor of the moving party.'" Doing so is tantamount to making a
> credibility determination, and—at this summary judgment
> stage—a court "may make no credibility determinations." Instead,
> a court "must disregard all evidence favorable to the moving party
> that the [finder of fact] is not *required* to believe." Although a court
> "is not required to accept the nonmovant's conclusory allegations,
> speculation, and unsubstantiated assertions which are either
> entirely unsupported, or supported by a mere scintilla of evidence,"
> a nonmovant's statement may not be rejected merely because it is
> not supported by the movant's or its representatives' divergent
> statements.[47]

The district court in this case similarly erred by crediting Morgan's

affidavit and rejecting Harter's. In short, there is a genuine dispute of material

---

[44] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[45] *Chambers*, 428 F. App'x at 408 (citing *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000)).

[46] *Alkhawaldeh*, 851 F.3d at 425–26 (citing *Burell*, 820 F.3d at 136).

[47] 832 F.3d at 245 (citations omitted).

fact about whether the payments were authorized. Because the fact of unauthorized payments is critical to each of Legacy's claims,[48] the grant of summary judgment was improper.

### C.

The parties agree that the propriety of Legacy's attorney fees on its breach of contract claim rises and falls with the propriety of the grant of summary judgment on that claim. Because we hold that summary judgment was improper, we reverse the grant of attorney fees on those claims.

### D.

Finally, Harter argues that "[t]he district court severely limited discovery" and that "[t]he parties were not allowed to serve requests for production, interrogatories or requests for admission. No depositions were allowed." Harter asks this Court to "instruct the district court to allow the parties to conduct real discovery" to prepare for trial in the event of a remand. Legacy responds that Harter never filed a Rule 56(d) motion prior to summary judgment to seek a continuance for additional discovery, and contends that Harter has waived the argument.

"Courts are authorized under Rule 56(d) to defer ruling on a summary judgment motion and allow discovery, but 'Rule 56 does not require that *any* discovery take place before summary judgment can be granted.'"[49] This Court has explained, "[i]f [a party] felt that he could not properly defend against

---

[48] *See Neese v. Lyon*, 479 S.W.3d 368, 386 (Tex. App. 2015), *reconsideration en banc denied* (Nov. 19, 2015), *reh'g overruled* (Nov. 19, 2015) (listing elements of breach of fiduciary duty); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (listing elements of fraud); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) (describing fraud by non-disclosure as "a subcategory of fraud"); *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App. 2008) (listing elements of breach of contract).

[49] *Mendez v. Poitevent*, 823 F.3d 326, 336 (5th Cir. 2016) (quoting *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005)).

the . . . motion for summary judgment without additional time to complete discovery, Federal Rule of Civil Procedure 56(d) provide[s] him with an appropriate remedy."[50] Because Harter failed to avail himself of this remedy, his claim on appeal is waived.[51]

Furthermore, "[a] district court has 'broad discretion in all discovery matters', and 'such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.'"[52] Harter has not demonstrated any clear abuse here. Consequently, there is no reason for this Court to direct the district court on discovery matters.

## IV.

Because there are genuine issues of material fact, a grant of summary judgment is inappropriate. We accordingly AFFIRM the district court's denial of summary judgment to Harter, REVERSE the district court's grant of summary judgment to Legacy, and remand to the district court for further proceedings, including a trial by jury.

---

[50] *Intercity Ambulance Emergency Med. Technicians, LLC v. City of Brownsville*, 655 F. App'x 1005, 1007 (5th Cir. 2016) (per curiam) (citation and footnote omitted).

[51] *See Emrich v. JP Morgan Chase Bank, N.A.*, 575 F. App'x 502, 504 (5th Cir. 2014) (per curiam) ("Because Emrich did not request a continuance under Rule 56(d) in the district court, Emrich waived the issue of inadequate discovery." (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 719 (5th Cir. 1999); *Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 887 (5th Cir. 1996))).

[52] *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982)).