SHELL OIL COMPANY; SWEPI LP
d/b/a Shell Western E&P, Successor in
Interest to Shell Western E&P, Inc.,
Petitioners,

v.

Ralph ROSS, Respondent.

No. 10–0429.

Supreme Court of Texas.

Argued Oct. 4, 2011.

Decided Dec. 16, 2011.

Rehearing Denied Feb. 17, 2012.

Michael Andrew Heidler, Vinson & Elkins LLP, Dan Miller, Gregory S. Friend, McElroy Sullivan & Miller LLP, Austin, TX, Marie R. Yeates, Vinson & Elkins, L.L.P., Houston, TX, for Petitioners.

Mark L. Perlmutter, Carl Brooks Schuelke, Perlmutter & Schuelke, L.L.P., Austin, TX, David W. Scott, Attorney at Law, Georgetown, TX, for Respondent.

Everard A. Marseglia Jr., Liskow & Lewis, A PLC, Houston, TX, for Amicus Curiae Texas oil & Gas Association.

Jesse R. Pierce, Jesse R. Pierce & Associates, P.C., Houston, TX, for Amicus Curiae Chesapeake Exploration, L.L.C.

Charles Lawrence Stinneford, Gordon Arata McCollam Duplantis & Eagan, LLC, Houston, TX, for Amicus Curiae American Petroleum Institute and Independent Petroleum Association of America.

Justice LEHRMANN delivered the opinion of the Court.

This case involves a dispute concerning alleged underpayments of gas royalty. We must decide whether limitations barred a royalty owner's claims against the operator of the field. We hold that the fraudulent concealment doctrine does not apply to extend limitations as a matter of law when the royalty underpayments could have been discovered from readily accessible and publicly available information before the limitations period expired. When, as in this case, the information was publicly available and readily accessible to the royalty owner during the applicable time period, a royalty owner who fails to take action does not use reasonable diligence as a matter of law. It has long been the law that the discovery rule does not apply to defer the accrual of royalty owners' claims for underpayments when the injury could have been discovered through the exercise of due diligence. Accordingly, because the parties do not dispute that the pertinent information was readily accessible and publicly available, the royalty owner's claims are time-barred as a matter of law.

Ralph Lee Ross sued Shell Oil Company and Shell Western E & P (collectively "Shell") for breach of contract, unjust enrichment, and fraud, based on claims that Shell underpaid royalty due under a mineral lease to Ross's grandmother, Gertrude T. Reuss (the family is collectively referred to as "the Rosses"). We are

asked to determine whether limitations barred the Rosses' claims.

Based on jury findings that Shell fraudulently concealed its underpayments, the trial court rendered judgment for the Rosses. A divided court of appeals affirmed the trial court's judgment. 357 S.W.3d 8 (Tex.App.–Houston [1 Dist.] 2010). We reverse the court of appeals' judgment and render judgment for Shell.

## I. Factual and Procedural History

In 1961, Shell entered into a mineral lease with Gertrude T. Reuss and her husband, G.T. Reuss ("Reuss Lease"). Several years later, Shell contributed parts of the land covered by the Reuss Lease to two pooled units—the Houston Unit and the Lasater Unit. In addition to the two wells Shell drilled on land covered by the Reuss Lease ("Lease Wells"), both the Houston Unit and the Lasater Unit contained a producing well located on land not covered by the Reuss Lease ("Unit Wells"). Shell paid royalty to the Rosses on both the Lease Wells and the Unit Wells. The Reuss's son, Ralph Louis Ross, administered the Reuss Lease and became trustee of the trust that held the lease when Gertrude Reuss died in 1998. Ralph Louis Ross was a lawyer who had done oil and gas work, and thus understood the oil and gas industry. In 2002, Ralph Louis Ross assigned all rights in the Reuss Lease to his son, Ralph Lee Ross.

Under the Reuss Lease, Shell was required to pay the Rosses "one-eighth of the amount realized" by Shell for any gas or casinghead gas produced from the land. The pooling and unitization agreement split the one-eighth royalty with the State,

with both the State and the Rosses receiving a one-sixteenth royalty. However, Shell did not pay the Rosses based on third-party sale prices as required by the Reuss Lease. From 1994 to 1997, Shell paid royalty based on a so-called "arbitrary price" for the Lease Wells. At trial, Shell could not explain how or why it used this price instead of the third-party sales price, and admits that it "made a mistake."[1] From 1988 to 1994, Shell used a weighted-average method calculation for the Unit Wells, averaging the third-party sales prices of Shell and other operators for sales from the Lasater and Houston Units.[2]

In 2002, the Rosses sued Shell for breach of contract, unjust enrichment, and fraud. They alleged that the fraudulent concealment doctrine tolled the statute of limitations because Shell "set up an elaborate scheme to allow it to [underpay] royalties, and then made multiple misrepresentations to cover up this scheme, [including] making false representations in the monthly [royalty] statements," which the Rosses reasonably relied on. Before the case was submitted to the jury, Shell stipulated that unless it prevailed on its statute of limitations defense, the Rosses were entitled to recover damages on their claim that Shell underpaid royalty on the Lease Wells by using the so-called arbitrary price to calculate royalty. Additionally, the trial court ruled, as a matter of law, that Shell had breached the lease by using the weighted-average method to calculate royalty for the Unit Wells. The only issues sent to the jury were (1) whether Shell fraudulently concealed its failure to pay royalty in accordance with

1. Shell suggests that the "arbitrary price" may have been a computer glitch or an accounting error.

2. Shell contests that its use of the weighted-average method for the Unit Wells was a breach of the Reuss Lease, but does not contest that its use of the "arbitrary price" for the Lease Wells was a breach.

the terms of Reuss Lease and (2) the dates on which the Rosses, exercising reasonable diligence, could have discovered that Shell failed to pay royalties in accordance with the Reuss Lease. The jury found for the Rosses on the fraudulent concealment issue for both the Lease Wells and the Unit Wells.[3] The Rosses were awarded actual damages of $72,532.09 plus prejudgment interest, attorney's fees, and court costs.

The court of appeals affirmed, holding that Shell knowingly underpaid royalty and that the fraudulent concealment doctrine tolled the statute of limitations. 357 S.W.3d at 19. The majority reasoned that "the evidence presented ... support[ed] the jury's findings as to Shell's fraudulent concealment of its wrongful conduct and as to when the Rosses, with the exercise of reasonable diligence, could have discovered the wrongful conduct and their claims." *Id.* at 23.

## II. Limitations

Shell challenges the court of appeals' ruling that the Rosses' claims were not barred by limitations. Shell asserts that the court of appeals erred in holding that the fraudulent concealment doctrine tolled the limitations period. We agree that the fraudulent concealment doctrine did not toll the limitations period, but this does not end our analysis. We must also consider whether the discovery rule exception to limitations applied to defer accrual of the cause of action. We consider each doctrine in turn.

## A. Fraudulent Concealment

■ We have recognized two doctrines that may apply to extend the statute of limitations. *Computer Assocs. Int'l, Inc. v.*

*Altai, Inc.*, 918 S.W.2d 453, 455–56 (Tex. 1994). The first, fraudulent concealment, is an equitable doctrine that is fact-specific. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex.2011). Fraudulent concealment tolls limitations "because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex.1996).

■ In this case, the jury found that Shell fraudulently concealed its failure to pay royalty in accordance with the Reuss Lease for the Lease Wells and the Unit Wells. The jury also found that the Rosses, exercising reasonable diligence, could not have discovered that Shell failed to pay royalty in accordance with the Reuss Lease until 2002 for the Lease Wells and until 2006 for the Unit Wells. A defendant's concealment of wrongdoing may toll the running of limitations. *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex.2001). The fraudulent concealment doctrine requires that the Rosses prove Shell "actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong." *Id.* However, fraudulent concealment only tolls the statute of limitations until "the fraud is discovered or could have been discovered with reasonable diligence." *BP Am.*, 342 S.W.3d at 67.

■ The Rosses argue that reasonable reliance on fraudulent representations negates any duty to investigate unless and until further information comes to light which re-triggers that duty, and that they reasonably relied on the prices listed on check stubs that Shell enclosed with its monthly royalty statements since misrepresenting the price would be a violation of the Natural Resources Code. *See* TEX. NAT.

---

**3.** Specifically, the jury found that the Rosses could have, with the exercise of reasonable diligence, discovered the underpayments on the Lease Wells in 2006 and the Unit Wells in 2002.

Res.Code § 91.502(4) (requiring each check stub to include "the price per barrel or per MCF of oil or gas sold"). We disagree. Reasonable diligence requires that owners of property interests make themselves aware of relevant information available in the public record. For example, in *BP America*, we held that the limitations period was not tolled as a matter of law because BP's fraudulent misrepresentations about its good faith efforts to develop a well could have been discovered from publicly available information within the limitations period. 342 S.W.3d at 68–69. In *Kerlin v. Sauceda*, we held that a deed holder's descendants who had been given notice that deeds executed by their predecessors contained royalty reservations, but had not received any royalty payments for minerals on their property, could have discovered the existence of their claims for unpaid royalties by investigating public records of case settlements and conveyances. 263 S.W.3d 920, 926 (Tex.2008).

The Rosses did not exercise reasonable diligence and their claims are barred by limitations if readily accessible and publicly available information could have ·revealed Shell's wrongdoing before the limitations period expired. They argue that additional investigation would not have led to discovery of Shell's breach since the only way the Rosses could have discovered what Shell actually was paid for the gas was by obtaining Shell's internal records or a confidential contract with a third-party, El Paso Natural Gas. The Rosses claim Shell would not have been forthcoming with the information and that there were no publicly-available records that would have put them on notice of their claims. Shell responds that the Rosses could have discovered Shell's breach if they had conducted additional investigation, including asking Shell about the prices, asking the companies Shell sold the

gas to the price they paid, consulting publicly available records at the Texas General Land Office (GLO), and researching the prices listed in the publicly-available El Paso Permian Basin Index.

The record in this case indicates that Shell underpaid royalty to the Rosses for years. Although the Reuss Lease required Shell to pay the Rosses "one-eighth of the amount realized" by Shell for any gas or casinghead gas produced from the land, Shell did not pay the Rosses based on the third-party sales price and instead used an arbitrary price it cannot explain for the Lease Wells and a weighted-average calculation for the Unit Wells. The prices listed on the check stubs enclosed with the monthly royalty payments were not the same as the prices Shell was being paid for the gas, which the Rosses argue is fraudulent. The Rosses claim they reasonably relied on the information provided by Shell.

■■■ However, "reliance is not reasonable when information revealing the truth could have been discovered within the limitations period." *BP Am.*, 342 S.W.3d at 68. Diligence is required when claimants have been "put on notice of the alleged harm of injury-causing actions." *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 207 (Tex.2011); *see also HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex.1998) (holding that "[r]oyalty owners cannot be oblivious" to potentially injurious activity taking place in the field). Here, the Rosses were put on notice that Shell was underpaying royalty. The large difference in the prices paid to the Rosses on the Unit Wells and on the Lease Wells triggered the Rosses' duty to investigate the royalty payments. The Rosses received these royalty payments on the Unit Wells and the Lease Wells every month. During most months, the price paid on the

Lease Wells was fifty to sixty percent higher than the price paid on the Unit Wells.[4] Since the payments were based upon wells located in a common reservoir, the significant discrepancy in prices should have alerted the Rosses to potential royalty underpayments. The Rosses argue, and the court of appeals reasoned, that since different heating values could explain the differences between the royalty paid for the Unit Wells and the Lease Wells, the Rosses were under no duty to investigate the discrepancy. 357 S.W.3d at 22. But, a royalty owner cannot avoid making a diligent investigation just because there might be a legitimate explanation for a suspicious royalty payment. *See Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 737 (Tex.2001) (stating "those who receive statements listing fees charged should be alerted to the need to perform additional investigation to protect their interests" even though such fees might have a legitimate explanation).

Readily accessible and publicly available information could have led the Rosses to discover that Shell was underpaying royalty before the limitations period expired. The prices listed in the El Paso Permian Basin Index ("Index Price"), which is readily accessible to the public, would have informed the Rosses that Shell was underpaying royalty. The Index Price varies greatly from the prices Shell used to calculate and pay royalty on the wells from 1991 to 1995.[5] The Index Price represents an average price, and the prices on which Shell based the Rosses' royalty payments were routinely below that. Furthermore, researching the GLO records would have

revealed the prices Shell paid to the State. Under the pooling and unitization agreement, Shell was required to pay both the State and the Rosses a one-sixteenth royalty. However, the royalty payments to the State were routinely higher than the prices paid to the Rosses. Even though the GLO records did not list the price Shell actually received for the gas, the information about the price it paid the State would have revealed that Shell was underpaying royalty to the Rosses since the Rosses were consistently paid a lower royalty than the State was. These readily accessible, publicly available documents, the GLO records and the prices listed in the El Paso Permian Basin Index, together could have led the Rosses to discover that Shell was underpaying royalty. It is undisputed that the information in the El Paso Permian Basin Index and the prices received by the State were readily accessible to the public. As a matter of law, the Rosses did not use reasonable diligence since readily accessible and publicly available information could have led to the discovery of Shell's underpayments. Because the Rosses could have discovered Shell's alleged fraud through the use of reasonable diligence, we hold that, as a matter of law, the doctrine of fraudulent concealment cannot apply to toll the statute of limitations.

**B.  Discovery Rule**

The second doctrine that may apply to extend the statute of limitations in this case is the discovery rule, a "very limited exception to statutes of limitations," which defers the accrual of the

---

4.  In one month, the price paid on the Lease Wells was ninety-three percent greater than the price paid on the Houston Unit Well.

5.  Although the prices listed in the El Paso Permian Basin Index are stated on a heat-adjusted, MMBTU Basis, and the royalty

statement prices are stated on a volumetric, MCF basis, the difference between the prices is too large to be explained by heat prices alone, as the index prices were often between seventy-five and one hundred percent higher than the prices Shell paid the Rosses.

cause of action until the injury was or could have reasonably been discovered. *Computer Assocs. Int'l*, 918 S.W.2d at 455. The discovery rule applies "only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Wagner & Brown, Ltd.*, 58 S.W.3d at 734. An injury is inherently undiscoverable if by its nature, it is "unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V. v. R.V.*, 933 S.W.2d at 7. The legal question of whether an injury is inherently undiscoverable is determined on a categorical basis. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex.2006); *Wagner & Brown, Ltd.*, 58 S.W.3d at 735.

In *Wagner & Brown*, we held that the discovery rule did not apply to defer the accrual of royalty owners' claims for underpayments since the injury was not inherently undiscoverable because the royalty owners could have timely discovered the underpayments through the exercise of due diligence. *Id.* at 737. Similarly, in this case, the Rosses could have timely discovered the underpayments through the exercise of due diligence. We therefore hold that the Rosses' claims are barred by the statute of limitations, and reverse and render judgment for Shell.

## III. Conclusion

We hold that evidence conclusively established that Shell's alleged fraud could have been discovered by the Rosses through the exercise of reasonable diligence. Accordingly, we reverse the court of appeals' judgment and render judgment for Shell.