# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00789-CV

---

**Dragan Boroja, Appellant**

**v.**

**Alexander Le Roux, Jason Ballard, Evan Loomis, and Icon Technology, Inc., Appellees**

---

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-23-003714, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Dragan Boroja appeals from the trial court's summary judgment rendered in favor of Alexander Le Roux, Jason Ballard, Evan Loomis, and Icon Technology, Inc. Boroja sued appellees for fraud, fraudulent transfer, and conspiracy to commit fraud and fraudulent transfer. The controlling legal issues are whether (1) appellees conclusively disproved Boroja's asserted tolling of the applicable statutes of limitations and (2) there is a genuine issue of material fact as to Boroja's status as a "creditor" under the Texas Uniform Fraudulent Transfer Act (TUFTA). *See* Tex. Bus. & Com. Code §§ 24.001–.013. For the following reasons, we affirm the trial court's summary judgment.

## BACKGROUND

As alleged in his live petition, Boroja is a member of Modeco Development, LLC, a Michigan-based architectural firm that constructs homes and commercial buildings from

shipping containers. In early 2016, Boroja read about Le Roux's work with 3D printers and his concept to use the technology to build homes using a cement mixer and architectural programming with a 3D printer. Boroja contacted Le Roux and agreed to invest in his company, ALR Technologies, LLC, in exchange for a 20% ownership interest in the company. Over the next year, Boroja alleges that he contributed capital, knowledge, and ideas to ALR's venture, and Le Roux continued to develop ALR's Vesta 3D concrete printer that he had designed for "printing" buildings. In a March 1, 2016 license agreement, for consideration of $8,000, ALR granted to Modeco a limited license for use of the "Vesta Printer" technology—referred to as "Technical Information" in the license agreement. In his petition, Boroja refers to the Technical Information and ALR's "intellectual property rights, designs, etc." collectively as "ALR's Valuable Assets." Boroja alleges that funding provided by Modeco "was partially used to build an eight-by-five-by-seven-foot concrete 'Tiny House'" and that Le Roux and Boroja "had plans to debut an upgraded version of the Vesta Printer (version 3) later that year [2016] to 3D print a completely up-to-code home in Michigan, as well as to raise funds from institutional investors."

Boroja alleges that in early 2017, Le Roux met with Loomis and Ballard—who at the time were operating an eco-centric building supply company called Treehouse—and began talking with them about collaborating on 3D house-printing technology. About six months later, Le Roux informed Boroja that "the Treehouse guys" no longer wanted to proceed with a business relationship with ALR and would "go their own way." However, Boroja alleges that Le Roux nonetheless collaborated with Loomis and Ballard without telling Boroja. Instead of offering to buy him out or give him an opportunity to join in the collaboration, Le Roux "secretly transferred ALR's Valuable Assets to Defendants and concealed his malfeasance by making materially false statements to Boroja." This "scheme" of the defendants was "designed to, and

2

did, completely conceal from Boroja the fraudulent transfer of ALR's Valuable Assets and the conspiracy among the Defendants to co-opt them without properly compensating Boroja."

Boroja alleges that in the summer of 2017—while appellees "were engaged in implementing and concealing their scheme to transfer ALR's Valuable Assets" to Icon (Ballard and Loomis's company)—Le Roux began to dissolve ALR and on August 15, 2017, sent Boroja a final tax return showing that ALR had a loss for the year of $6,808 and no assets. The tax return did not reflect "any gross receipts or sales from the transfer of ALR's Valuable Assets to ICON, or any distribution of ALR's Valuable Assets to Le Roux." "In other words, Le Roux made sure that the tax return . . . was consistent with the false narrative he told Boroja a month earlier so that Boroja would never know that Le Roux either distributed ALR's Valuable Assets to the Defendants, or sold [them] to ICON, Loomis, and/or Ballard as Loomis had secretly proposed to Le Roux [i]n February 2017." On August 23, 2017, Le Roux filed a Certificate of Termination for ALR "without Boroja's consent," and following ALR's termination, "Defendants wasted no time in capitalizing on the illicitly transferred assets."

Boroja alleges that appellees moved forward with their scheme, engaging a design-engineering firm to develop a new product based on the Vesta Printer technology, their new Vulcan Printer. Icon "pressed forward" with a launch of its Vulcan Printer at the 2018 SXSW conference. Boroja alleges that "on the heels of this event, ICON raised around $9 million from investors that, in the next 3 years, reportedly led to fundraising rounds exceeding $250 million" and "on the basis of 3D concrete printing technology that Boroja held a 20% stake [in], ICON is reported to have a nearly $2 billion value." Had Boroja "known the truth about what Defendants had done, he would have required Le Roux, and/or those acting in concert with

3

him, to properly compensate him for his portion of ALR's assets that were fraudulently transferred, stolen, and/or misappropriated by Le Roux and his co-conspirators."

Boroja alleges that he did not learn that Le Roux had partnered with Loomis and Ballard in forming Icon to develop a printer "that appeared to have many similarities to the Vesta Printer and, more suspiciously, the planned Vesta 3 Printer" until December 2021, when while performing a Google search on his own company he happened upon an article mentioning Le Roux. Boroja contends that the communications revealed in discovery support his allegation of a conspiracy among appellees to intentionally deceive him and "to neutralize him while transferring ALR's Valuable Assets" to Icon and use the assets to create the Vulcan Printer, all to his detriment. "But for the fraudulent transfer of ALR's Valuable Assets, it is unlikely that ICON would have been able to create the Vulcan Printer and to raise the funds to propel its business forward a mere seven months after" Icon's founding.

Boroja alleges that "the fraudulent concealment perpetrated by Defendants tolls the limitations periods" for his claims because they "made no fewer than eight (8) fraudulent representations to Boroja between February and August 2017 that were designed to conceal Defendants' unlawful conduct." He also asserted the discovery rule as an alternative doctrine for tolling limitations on his claims against appellees for fraud, TUFTA violations, and conspiracy to commit fraud and TUFTA violations. Appellees filed a joint summary-judgment motion, arguing that they were entitled to summary judgment because (1) the limitations period had run on each of Boroja's claims before he filed suit on April 15, 2022, and as a matter of law, the limitations periods were not tolled because Boroja had actual notice of appellees' alleged injury-causing actions; and (2) Boroja is not a creditor under TUFTA and thus cannot make a claim

4

under that statute. Without specifying its reasoning, the trial court granted the motion and rendered a take-nothing judgment on all Boroja's claims. Boroja timely perfected this appeal.

## DISCUSSION

In two issues, Boroja contends that the trial court erred in granting appellees summary judgment because genuine issues of material fact exist regarding both grounds raised in appellees' motion. Because we conclude that the trial court properly granted summary judgment on the first ground—whether the applicable limitations periods had run or were tolled—we need not address the second ground. *See* Tex. R. App. P. 47.1.

To obtain traditional summary judgment on a limitations defense, the defendant must conclusively prove (1) when the cause of action accrued and (2) that the plaintiff brought his suit later than the applicable number of years thereafter.[1] *See Draughon v. Johnson*, 631 S.W.3d 81, 89 (Tex. 2021). Additionally, if the plaintiff asserts a tolling doctrine or the discovery rule as an exception to limitations, the movant must conclusively negate the application of the doctrine. *See id.* at 90. The discovery rule applies where the "alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified" and defers accrual until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury. *See id.* at 89 (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4, 6 (Tex. 1996)). The doctrine of fraudulent concealment exists to toll limitations "because a person cannot be permitted to avoid liability for his

---

[1] It is undisputed that a four-year statute of limitations applies to fraud claims, *see* Tex. Civ. Prac. & Rem. Code § 16.004(a)(4), a four-year statute of repose applies to TUFTA claims, *see* Tex. Bus. & Com. Code § 24.010(a)(1), and conspiracy—being a theory of vicarious liability and not an independent tort—shares the statute of limitations of its underlying tort, *see Agar Corp. v. Electro Circuits, Int'l, LLC*, 580 S.W.3d 136, 144 (Tex. 2019).

5

actions by deceitfully concealing wrongdoing until limitations has run." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011). To successfully establish fraudulent concealment, a claimant must prove that the defendant "actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong." *Id.* The doctrine will not bar limitations, however, when the plaintiff discovers the wrong or could have discovered it through the exercise of reasonable diligence. *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008).

Appellees contended below that Boroja's three causes of action accrued no later than August 29, 2017, when Boroja confirmed by text that he had received notice of ALR's dissolution over his objection. Generally, a claim accrues when the defendant's wrongful conduct causes the claimant to suffer a legal injury, which gives the claimant the right to seek a judicial remedy. *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 814 (Tex. 2021).

> Once the defendant's wrongful conduct causes a legal injury, the injured party's claims based on that wrongful conduct accrue—and the limitations period begins to run—even if (1) the claimant does not yet know that a legal injury has occurred, (2) the claimant has not yet experienced or does not yet know the full extent of, the legal injury, (3) the claimant does not yet know the specific cause of the injury or the party responsible for it, (4) the wrongful conduct later causes additional legal injuries, or (5) the claimant has not yet sustained or cannot yet ascertain any or all of the damages resulting from the legal injuries.

*Id.*

The date a cause of action accrues is a generally question of law. *See Provident Life & Acc. Ins. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). For TUFTA claims, a claim accrues when "the transfer was made or the obligation was incurred." Tex. Bus. & Com. Code § 24.010(a). In his petition, Boroja contends that "Le Roux transferred ALR's Valuable Assets to ICON between February and August 2017, dissolved ALR on August 23, 2017, without

6

distributing assets to Boroja." Boroja confirmed on August 29, 2017, that he received notice of ALR's dissolution. Thus, absent the application of the discovery rule, Boroja's TUFTA claim accrued no later than August 29, 2017. A fraud claim accrues on the date the fraud is perpetrated, i.e., when the defendant makes the allegedly false representation, *see Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 216 (Tex. 2011), and a conspiracy claim shares the accrual date of the underlying wrong, *see Agar Corp. v. Electro Cirs., Int'l, LLC*, 580 S.W.3d 136, 144 (Tex. 2019). Boroja alleges that appellees made the challenged false representations to him during the same period when the alleged fraudulent transfer occurred—between February and August 2017. Thus, absent application of the discovery rule, we agree with appellees that Boroja's claims accrued no later than August 29, 2017—the date by which Boroja alleges Le Roux transferred ALR's assets to Icon, made false representations to him about appellees' scheme, and terminated ALR's corporate existence without distributing a pro rata share of its assets to Boroja. Having determined the accrual date of Boroja's three causes of action, we consider whether appellees conclusively negated application of the discovery rule and fraudulent concealment.

An injured party's actual knowledge of alleged injury-causing conduct starts the clock on the limitations period, irrespective of the potential effect of fraudulent concealment or the discovery rule on limitations. *See Exxon Corp.*, 348 S.W.3d at 209. In other words, a person's knowledge of an injury initiates the accrual of the cause of action and triggers his duty to exercise reasonable diligence to investigate the problem, even if he does not know the specific cause of the injury or the full extent of it. *See PPG Indus., Inc. v. JMB/Houston Ctrs. Ltd. P'ship*, 146 S.W.3d 79, 93–94 (Tex. 2004); *see also Exxon Corp.*, 348 S.W.3d at 207 (holding that diligence is required when claimant has been put on notice of alleged harm of injury-causing

7

action). Although the exercise of reasonable diligence is usually a question of fact, courts can determine as a matter of law that reasonable diligence would have uncovered the wrong within the limitations period when there is actual or constructive notice of alleged injury-causing actions. *See Cosgrove v. Cade*, 468 S.W.3d 32, 38–39 (Tex. 2015) (citing *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015)). In such instances, the accrual of a claim is not tolled because the plaintiff is deemed to have failed to exercise reasonable diligence as a matter of law. *See id.*

Here, it is undisputed that as of August 29, 2017, Boroja knew that ALR's dissolution was complete, and he had received a copy of its final tax return. His awareness of this information put him on notice of his potential injuries arising from appellees' conduct because by that date he admittedly knew that ALR (1) no longer had any assets of value (including intellectual property); (2) had reported a net loss for its final tax year; and (3) would not therefore be distributing assets to him, as a member, upon its dissolution. Any related misrepresentations or fraudulent concealment of material information do not mean that Boroja's claims did not accrue by August 29, 2017, because of his admitted knowledge of the basic facts giving rise to his alleged injuries and claims: as a member of ALR, he would ordinarily be entitled to a pro rata distribution of the entity's assets upon dissolution, *see* Tex. Bus. Org. Code § 11.053, but ALR purported to no longer have any assets and to be in debt upon dissolution, and Boroja received nothing. Moreover, Boroja alleges that ALR's tax return did not indicate any transfer of its Valuable Assets to Icon or to any other party for the year. Boroja admits he was aware that (a) in early 2017 ALR owned Valuable Assets; (b) over the new few months Le Roux courted a joint venture with other investors to develop and market ALR's intellectual property; (c) in July 2017, Le Roux purported to abandon the relationship; and (d) in August 2017,

8

Le Roux dissolved ALR against Boroja's wishes and reported that the entity no longer had any assets but only debt. These undisputed facts preclude him from relying on either the discovery rule or the tolling doctrine of fraudulent concealment as a matter of law because by August 29, 2017, his duty to exercise reasonable diligence and investigate the situation was triggered. *See Exxon Corp.*, 348 S.W.3d at 207; *PPG Indus.*, 146 S.W.3d at 93–94. "Knowledge of facts, conditions, or circumstances which would cause a reasonable person to make inquiry leading to the discovery of the concealed cause of action is in the law equivalent to knowledge of the cause of action for limitation purposes." *Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 747 (Tex. App.—Houston [14th Dist.] 1993, writ denied). In light of the information that Boroja admits he had as of August 29, 2017, we hold that Boroja would have discovered appellees' alleged wrongdoing within the limitations period if he had exercised reasonable diligence and that appellees conclusively established their entitlement to summary judgment by negating Boroja's assertion of the discovery rule and fraudulent concealment.

## CONCLUSION

Having concluded that the trial court did not err in granting appellees summary judgment, we affirm its final judgment.

_____

Karin Crump, Justice

Before Justices Theofanis, Crump, and Ellis

Affirmed

Filed: March 12, 2025