**Dissenting opinion on rehearing issued January 30, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-21-00331-CV

————————————

## IN THE ESTATE OF LARRY WAYNE EWERS, DECEASED

On Appeal from Probate Court No. 2
Harris County, Texas
Trial Court Case No. 483323

## DISSENTING OPINION

In this appeal, appellant, Janice Ewers ("Janice"), individually and as independent administrator for the estate of Larry Ewers ("Larry's estate"),

challenges the trial court's judgment, entered after a bench trial, in the suit for fraud and unjust enrichment brought against Larry's estate by appellees, Joseph Fauth, III and Prentice Cooper (collectively, "appellees"). In six issues, Janice contends that the trial court erred in concluding that appellees' claims against Larry's estate were not barred by the applicable statutes of limitations, in removing her as the independent administrator of Larry's estate, and in finding that Larry made a fraudulent transfer to Janice before his death.

Related to Janice's statute-of-limitations complaint, the majority opinion erroneously concludes that neither the failure of Citadel Exploration, LLC ("Citadel") to comply with its agreement to repay appellees' loans to Larry Ewers ("Larry") in 2011, nor the stopping of payments to appellees in 2014, conclusively establishes that appellees had actual notice of their legal injuries more than four years before they filed suit against Larry's estate. In reaching such a conclusion, the majority opinion conflates knowledge of a legal injury with knowledge of a theory of recovery, which is contrary to Texas law on the accrual of claims.

Further, I note that the majority opinion errs in failing to consider the terms of the Citadel contracts in determining whether appellees had knowledge of their legal injury. Validity aside, the Citadel contracts formed the basis of appellees' relationships with Citadel and Larry and appellees' expectations about their purported investments. Thus, the Citadel contracts are indispensable to a fair

2

analysis of whether fraudulent concealment deferred accrual of appellees' claims, and the majority opinion's failure to consider them is erroneous.

Here, the evidence conclusively establishes that appellees had actual notice of their legal injuries and, through the exercise of reasonable diligence, could have discovered the facts giving rise to their claims for fraud and unjust enrichment more than four years before they filed suit against Larry's estate. Because appellees' claims are barred by the statute of limitations, I would hold that the trial court erred in rendering judgment in favor of appellees on their claims for fraud and unjust enrichment against Larry's estate. That result also requires the vacatur of the trial court's rulings on appellees' application to remove Janice as independent administrator of Larry's estate and appellees' fraudulent-transfer claim because appellees had no interest in Larry's estate. Because the majority opinion holds otherwise, I dissent.

## Statute of Limitations

In her first, second, and third issues, Janice argues that the trial court erred in concluding that appellees' claims for fraud and unjust enrichment against Larry's estate were barred by the applicable statute of limitations because appellees had actual knowledge of the wrongful act and their legal injury no later than April 2014, more than six years before they filed suit; neither fraudulent concealment nor the continuing tort exception applied to toll the statute of limitations; and the Citadel

3

contracts contradicted Larry's representations, "red flags" arose within the limitations period that should have led appellees to investigate, appellees admitted that nothing Larry represented prevented them from exercising ordinary care to protect their interests, and a reasonably prudent person under similar circumstances would have discovered the facts that caused appellees' legal injury within the statute of limitations period.

A four-year statute of limitations applies to appellees' claims against Larry's estate for fraud and unjust enrichment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004; *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 203 (Tex. 2011). "[T]he legal-injury rule determines when an injured party's claims accrue." *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 814 (Tex. 2021). Once a legal injury occurs, the injured party's claims accrue, and the statute of limitations begins to run,

> even if (1) the claimant does not yet know that a legal injury has occurred, (2) the claimant has not yet experienced, or does not yet know the full extent of, the legal injury, (3) the claimant does not yet know the specific cause of the injury or the party responsible for it, (4) the wrongful conduct later causes additional legal injuries, or (5) the claimant has not yet sustained or cannot yet ascertain any or all of the damages resulting from the legal injuries.

*Id.* (internal footnotes omitted); *see also Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 207 (Tex. 2011).

4

Texas courts recognize two common-law exceptions to the legal injury rule. *See S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). The discovery rule "defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 461 (Tex. 2023).

"A defendant's fraudulent concealment of wrongdoing can also toll the running of the limitations period." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011). The doctrine of fraudulent concealment tolls the statute of limitations "because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V.*, 933 S.W.2d at 6. This exception "resembles equitable estoppel" because it "estops the defendant from relying on the statute of limitations as an affirmative defense to [the] plaintiff's claim." *Marcus & Millichap*, 659 S.W.3d at 463.

But fraudulent concealment does not extend the statute of limitations period indefinitely. The estoppel effect of fraudulent concealment ends when "a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *Id.* at 464 (internal quotations omitted); *see also Shell Oil Co. v. Ross*, 356 S.W.3d 924, 928 (Tex. 2011) ("[F]raudulent concealment only tolls the

5

statute of limitations until "the fraud is discovered or could have been discovered with reasonable diligence."). Thus, like the discovery rule, the doctrine of fraudulent concealment "does not apply to claims that could have been discovered through the exercise of reasonable diligence." *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008).

Even if one of these exceptions to the legal-injury rule applies, then, a claim accrues "when the plaintiff knew or should have known of the wrongfully caused injury." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999). And the plaintiff can have knowledge of the wrongfully caused injury without knowing the specific nature of each wrongful act that may have caused it. *Id.*

Despite *KPMG*'s careful distinction between a plaintiff's knowledge of the injury and the plaintiff's knowledge of the nature of the acts that caused the injury, in this case, the majority opinion holds that there is "no conclusive evidence establishing the appellees' actual knowledge of the *injury-causing conduct*." (Emphasis added.) The supreme court's decision in *KMPG*, however, illustrates the fatal flaw in the majority opinion's holding.

In that case, KPMG Peat Marwick ("KPMG") provided accounting and auditing services to the county housing finance corporation ("HCH") for a series of bonds that HCH had issued. *Id.* at 747. The bank that served as trustee for the bonds

(the "trustee") later hired KPMG to prepare a special procedures report about the trust's assets. *Id.* KPMG did not tell HCH that it was also representing the trustee. *Id.*

In February 1993, HCH sued the trustee after learning that the trustee had sold capital reserve fund assets at a loss. *Id.* The trustee moved for summary judgment on HCH's claims against it. *Id.* The trustee's summary-judgment motion was granted, and HCH did not appeal that ruling. *Id.*

Later, in July 1995, HCH sued KPMG, alleging that KPMG had negligently or intentionally failed to disclose the trustee's mismanagement of the trust. *Id.* at 748. HCH claimed that its cause of action against KPMG did not accrue until October 1, 1993, when it first learned, in pretrial discovery in its suit against the trustee, that KPMG had failed to report the irregularities to HCH. *Id.*

KPMG moved for summary judgment on HCH's claims based on the statute of limitations, and the trial court granted the motion. *Id.* But the intermediate appellate court reversed that ruling, holding "that a claim does not accrue until plaintiff knows not only of the injury, but the specific nature of each wrongful act that may have caused the injury." *Id.* at 749.

Notably, the supreme court rejected the court of appeals's formulation of when a claim accrues. *Id.* Instead, the supreme court explained that "accrual occurs when the plaintiff knew or should have known of the wrongfully caused injury." *Id.*

7

And "[t]he summary judgment evidence established that the wrongful injury HCH allege[d] it suffered was the loss of over $621,000[.00] in December 1991 when it refunded the bonds following the premature sale in 1989 of the reserve fund assets." *Id.* Thus, when HCH brought its first suit against the trustee, it was already "aware . . . of its injury and that its injury was caused by the wrongful conduct of another." *Id.* As for the plaintiff's failure to discover KPMG's involvement until later, the supreme court noted that when HCH discovered its loss, it should have investigated "not only the possibility that [the trustee] had mismanaged the fund assets," but also why KPMG, as HCH's auditor, "did not discover or report the mismanagement." *Id.* at 750.

Applying *KPMG*'s analytical framework here, appellees need not have had actual notice that Larry did not merely breach the Citadel contracts but had actually defrauded appellees. Citadel's failure to repay appellees' loans to Larry in accordance with the agreements was enough to put appellees on actual notice of their legal injuries.

In analyzing whether appellees had notice of their legal injuries, the majority opinion discounts the Citadel contracts because the trial court ruled that they were void. But whether the contracts are valid has nothing to do with whether their terms are among the facts, conditions, and circumstances that would cause a reasonably prudent person to make an inquiry.

8

Parties to written agreements are presumed to have knowledge of and understand the contents of those agreements and their legal effect. *In re Raymond James & Assocs., Inc.*, 196 S.W.3d 311, 318–19 (Tex. App.—Houston [1ˢᵗ Dist.] 2006, no pet.); *see also Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 501 (Tex. 2015); *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996); *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962) (reaffirming principle that contracting parties "have an obligation to protect themselves by reading what they sign").

In the Citadel contracts, appellees warranted that they were "knowledgeable and experience[d] in the evaluation, acquisition and operation of oil and gas properties." They also represented "that they ha[d] such knowledge and experience in financial and business matters that they [were] capable of evaluating without outside assistance the merits and risks of investing in the [c]ontract [a]rea." Further, appellees affirmed their understanding that the Citadel contracts, "the exhibits [t]hereto and the [joint operating agreement] (together with its exhibits) . . . represent[ed] the entire understanding and agreement of the [p]arties." And appellees agreed that the Citadel contracts could "not be amended except by subsequent writing executed by all of the [p]arties."

Under the contract between Citadel, Fauth, and Fauth's wife, the Fauths invested a total of $820,000.00 in Citadel. Citadel agreed to reimburse the Fauths

9

$400,000.00 of that amount within fifty-nine days, making the Fauths' net investment $420,000 in exchange for a six percent interest in Citadel.

Under the contract between Citadel, Cooper, and Cooper's wife, the Coopers invested a total of $640,000.00. Citadel agreed to reimburse the Coopers $240,000.00 of that amount within fifty-nine days, "making the Coopers' net investment $420,000.00 [sic]" in exchange for a six percent interest in Citadel.

The material terms of a contract to loan money generally include the amount to be loaned, the maturity date, and the repayment terms. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *Smith v. Barnhart*, 576 S.W.3d 407, 417 (Tex. App.—Houston [1st Dist.] 2019, no pet.). The failure to make a complete payment when due under a contract may constitute a material breach. *N.Y. Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 215 n.1 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

Here, the terms of the Citadel contracts required that appellees' loans be repaid in full within fifty-nine days, yet neither Fauth nor Cooper received a reimbursement by the deadline stated in the Citadel contracts. Fauth, who had withdrawn funds from his retirement account to make the loan to Citadel, had to pay "just above $65,000.00 in penalties" and "additional taxes" because he did not receive the promised reimbursement.

When Citadel did not repay appellees' loans by May 23, 2011, it failed to comply with the reimbursement provisions of the Citadel contracts. A breach of contract can establish as a matter of law that a plaintiff has actual knowledge of his injury. *See Marcus & Millichap*, 659 S.W.3d at 462.

Here, there is no evidence that Larry attempted to conceal the significance of the default, which he might have done by offering appellees an increase of their six percent interest in Citadel. There is also no evidence that either Larry or appellees otherwise tried to renegotiate their contracts to account for Citadel's default and memorialize any modified terms in writing. Appellees testified only that Larry made some vague assurances about the long-term value of a deal with Dewbre Petroleum Corporation ("Dewbre Petroleum"). The evidence thus conclusively shows that by June 2011, appellees had actual knowledge that Citadel had defaulted on their loans.

In their fraud claims, appellees sought as damages the amounts they had paid Larry pursuant to the Citadel contracts, less the total amount they received from the periodic payments that stopped in 2014. Their damages claims included the loans to Citadel of $400,000.00 from the Fauths and $240,000.00 from the Coopers. Their claims accrued and limitations began to run when they did not receive reimbursement of those funds in 2011, even though they did not know the full extent of their legal injuries, the specific cause of the injuries, and could not then ascertain all of the damages resulting from them. *See Regency Field Servs*, 622 S.W.3d at

11

814; *Emerald Oil & Gas*, 348 S.W.3d at 209; *see also Marcus & Millichap*, 659 S.W.3d at 464.

Additionally, I note that the majority opinion erroneously concludes that appellees, through the exercise of reasonable diligence, could not have discovered Larry's fraud. *See Shell Oil Co.*, 356 S.W.3d at 928; *Kerlin*, 263 S.W.3d at 925. As holders of membership interests in Citadel, appellees had the right to inspect its records.[1] *See* TEX. BUS. ORGS. CODE ANN. § 101.109(a)(3), (4) (person who is assigned membership interest in limited liability company has right to make reasonable inspections of company's books and records even before membership); *see also In re Elusive Holdings*, 641 S.W.3d 498, 501 (Tex. App.—Austin 2021, orig. proceeding) (shareholder has common-law right to examine and copy certain records of corporation in which shareholder owns shares). Appellees provide no reason for relying solely on Larry's word about profits earned in the Dewbre deal and not examining Citadel's records, which would have revealed some irregularities about whether Citadel had any investment with Dewbre Petroleum.

Because no evidence supports the conclusion that fraudulent concealment or the continuing tort doctrine applied to toll the statute of limitations on appellees'

---

[1]    The majority opinion cites to appellees' testimony in characterizing them as unsophisticated investors. This characterization is contrary to appellees' own representations in the Citadel contracts. Further, the record shows that Fauth's wife, who was a signatory to the Citadel contract, was a certified public accountant who had worked for a Tenneco subsidiary as an accounting manager until about 2000.

12

claims and the evidence conclusively establishes that appellees had actual knowledge of their legal injuries and, through the exercise of reasonable diligence, could have discovered the facts giving rise to their claims for fraud and unjust enrichment more than four years before their filed suit, I would hold that the trial court erred in rendering judgment in favor of appellees on their claims against Larry's estate for fraud and unjust enrichment.

I would sustain Janice's first, second, and third issues.

## Standing

In her fourth issue, Janice argues that the trial court erred in removing her as independent administrator of Larry's estate because the statute of limitations barred appellees' claims against Larry's estate. In her fifth issue, Janice argues that the trial court erred in concluding that Larry's transfer of his interest in Green Energy Minerals, LLC ("GEM") before his death constituted a fraudulent transfer because appellees' claims against Larry's estate were barred by the applicable statute of limitations.

Here, because the majority opinion errs in holding that appellees' claims against Larry's estate were not barred by the statute of limitations, it necessarily follows that the majority opinion also errs in affirming the trial court's ruling removing Janice as independent administrator of Larry's estate and in concluding

13

that Larry's transfer of his interest in GEM to Janice before his death constituted a fraudulent transfer.

In removing Janice as independent administrator of Larry's estate, the trial court relied on Texas Estates Code section 361.052(a)(1) and (3), which allows a probate court, on its own motion or the motion of an interested person, to remove a "personal representative if (1) sufficient grounds appear to support a belief that the representative has misapplied, embezzled, or removed from the state, or is about to misapply, embezzle, or remove from the state, all or part of the property entrusted to the representative's care" or "(3) the representative fails to obey a proper order of the court that has jurisdiction with respect to the performance of the representative's duties." TEX. EST. CODE ANN. § 362.052(a)(1), (3). The trial court also mentioned Texas Estates Code section 404.0035, which allows a probate court, on its own motion, to "remove an independent executor . . . after providing [thirty] days' written notice of the court's intention to the independent executor" if "the independent executor becomes incapable of properly performing the independent executor's fiduciary duties due to a material conflict of interest." *See id.* § 404.0035.

But nothing in the trial court's judgment nor anything else in the record indicates that the trial court removed Janice as independent administrator of Larry's estate on its own motion. Other than a trial court, only an "interested person" may apply to remove an independent administrator. *See id.* § 362.052; *see also In re*

14

*Estate of Chapman*, No. 06-17-00051-CV, 2017 WL 5180405, at * (Tex. App.—Texarkana Nov. 9, 2017, no pet.) (mem. op.).

The Texas Estates Code defines an "interested person," in pertinent part, as "an heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered." TEX. EST. CODE ANN. § 22.018(1). The "interested person" requirement applies not only to removal actions, but also to any person objecting to or to participating in a probate proceeding. *See id.* § 55.001 ("A person interested in an estate may, at any time before the court decides an issue in a proceeding, file written opposition regarding the issue."); *In re Estate of Gomez*, No. 02-21-00290-CV, 2022 WL 2840109, at *4 (Tex. App.—Fort Worth July 21, 2022, no pet.) (mem. op.); *In re Estate of Velasco*, 214 S.W.3d 213, 216 (Tex. App.—El Paso 2007, no pet.) ("Under the [Texas] Probate Code, only a party 'interested in an estate' may bring an action to challenge a proceeding.").

The "interested person" requirement is one of standing. *See In re Estate of Daniels*, 575 S.W.3d 841, 844 n.4 (Tex. App.—Texarkana 2019, pet. denied) (addressing whether person was interested party entitled to standing in probate proceeding). Standing is a necessary element of subject matter jurisdiction, and it involves the court's power to hear a case. *Tex. Ass'n of Bus. v. Air Control Bd.*, 852 S.W.2d 440, 443, 445 (Tex. 1993). Because standing cannot be waived, it may be raised for the first time on appeal, either by a party or by the appellate court. *Id.*

15

As discussed above, the statutes of limitations applicable to appellees' claims for unjust enrichment and fraud against Larry's estate expired more than four years before appellees brought suit. Because appellees have no property right in or claim to Larry's estate, they lack standing to seek removal of Janice, the independent administrator, or otherwise challenge her actions as independent administrator. *See Wright v. Marsh*, Nos. 12-10-00367-CV, 12-10-00414-CV, 2012 WL 1623430, at *9 (Tex. App.—Tyler May 9, 2012, pet. denied) (mem. op.). Instead, the trial court lacked jurisdiction to grant appellees' application to remove Janice as independent administrator or to rule on appellees' challenge to Larry's transfer of his interest in GEM to Janice. Thus, I would hold that the trial court erred in doing both things, and I would vacate the trial court's rulings granting appellees' application to remove Janice as independent administrator and appellees' challenge to Larry's inter vivos transfer of his interest in GEM to Janice, dismissing those claims for lack of jurisdiction.

I would sustain Janice's fourth and fifth issues.[2]

## Conclusion

A faithful application of controlling precedent requires the conclusion that the undisputed evidence shows, as a matter of law, that appellees had actual notice of

---

[2]    Due to my holdings, I need not address Janice's sixth issue on appeal. *See* TEX. R. APP. P. 47.1.

16

their legal injuries and, through the exercise of reasonable diligence, could have discovered the facts giving rise to their claims for fraud and unjust enrichment against Larry's estate more than four years before they filed suit. Further, because appellees had no viable claims against Larry's estate, they had no standing to seek removal of its independent administrator or bring other claims against her. Because the majority opinion holds otherwise, I respectfully dissent.

 

 

 

                                     Julie Countiss
                                     Justice

Panel consists of Justices Goodman, Countiss, and Farris.

Countiss, J., dissenting.